Benjamin Galdston, Esq. (SBN 211114)
OMNUM LAW APC
4350 Executive Drive, Suite 350
San Diego, CA 92121
Tel.: 858.539.9767
E-Mail: bgaldston@omnumlaw.com

*Attorneys for Plaintiff AmNet ESOP Corp.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMNET ESOP CORPORATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CROSSCOUNTRY MORTGAGE, INC., et al.,<br><br>　　　　Defendants. | Case No. 3:24-cv-00970-MMA-KSC<br><br>**PLAINTIFF AMNET ESOP CORPORATION'S OPPOSITION TO DEFENDANT SPENCER THOMAS'S MOTION FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIM**<br><br>Hearing Date: Dec. 2, 2024<br>Time: 2:30 p.m.<br>Courtroom: 3D<br>Judge: Hon. Michael M. Anello<br><br>Amended Complaint Filed: Apr. 21, 2023<br>Trial Date: None Set |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................. 1

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ..................... 2

III. LEGAL STANDARDS .......................................................................... 4

IV. ARGUMENT ..................................................................................... 5

    A. Thomas's Proposed Counterclaim is Futile and Frivolous ............... 5

    B. Thomas Inexplicably and Unduly Delayed Seeking Leave to Amend ............ 8

    C. Thomas's Bad Faith Can Be Inferred From the Circumstances
       of the Motion and Thomas's History of Litigation Gamesmanship ............... 12

    D. Permitting Leave to Amend Will Cause AmNet Undue Prejudice ................. 13

V. CONCLUSION .................................................................................. 14

OMNUM LAW APC
4350 EXECUTIVE DRIVE, SUITE 350
SAN DIEGO, CALIFORNIA 92121

i
*AmNet ESOP Corp. v. CrossCountry Mortgage, Inc.*, Case No. 3:24-cv-00970-MMA-KSC
PLAINTIFF'S OPPOSITION TO DEFENDANT THOMAS'S MTN FOR LEAVE TO AMEND ANSWER

# TABLE OF AUTHORITIES

**Cases**

*Albers v. Yarbrough World Solutions, LLC*,
    No. 5:19-cv-05896-EJD, 2020 WL 6064334 (N.D. Cal. Oct. 14, 2020) ................... 10

*Allure Energy, Inc. v. Nest Labs, Inc.*, 84 F. Supp. 3d 538 (E.D. Tex. 2015) ............... 10

*AmerisourceBergan Corp. v. Dialysis W., Inc.*, 465 F.3d 946 (9th Cir. 2006) ................ 5

*Angelica Textile Serv., Inc. v. Park*, 220 Cal. App. 4th 495 (2013) ................................ 7

*Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149 (9th Cir. 1989) ............................... 5

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
    No. 12-CV-04000-EMC, 2016 WL 5869758 (N.D. Cal. Oct. 7, 2016) .................... 11

*DCD Programs, Ltd v. Leighton*, 833 F.2d 183 (9th Cir. 1987) ...................................... 5

*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008) ............................................. 7

*Finisar Corp., v. The DirecTV Group, Inc.*, 424 F. Supp. 2d 896 (E.D. Tex. 2006) ..... 11

*Foman v. Davis*, 371 U.S. 178 (1962) ............................................................................. 5

*Fowler v. Varian Assoc., Inc.*, 196 Cal. App. 3d 34 (1987) ............................................ 7

*Fullview, Inc. v. Polycom, Inc.*,
    No. 18-cv-00510-EMC, 2021 WL 1668017 (N.D. Cal. April 28, 2021) ................. 12

*Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877 (9th Cir. 1999) ........................................ 12

*Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15 (1st Cir. 1979) ............ 9

*Jackson v. Bank of Hawaii*, 902 F.2d 1385 (9th Cir. 1990) ............................................ 4

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) ..................... 9, 10

*Local Union No. 11 v. Thompson Electric, Inc.*, 363 F.2d 181 (9th Cir. 1966) .............. 6

*Mears Techs., Inc. v. Finisar Corp.*,
    No. 13-cv-376-JRG, 2014 WL 12605571 (E.D. Tex. Oct. 6, 2014) ........................ 11

*Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209 (9th Cir.1988) ........................................... 5

*Moore v. Kayport Package Express*, 885 F.2d 531 (9th Cir.1989) ................................. 5

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) ................. 13

*Muggill v. Reuben H. Donnelly Corp.*, 62 Cal.2d 239 (1965) ........................................ 7

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006) .... 10

OMNUM LAW APC
4350 EXECUTIVE DRIVE, SUITE 350
SAN DIEGO, CALIFORNIA 92121

*Sams v. Beech Aircraft Corp.*, 625 F.2d 273 (9th Cir. 1980) ............................................. 6

*Simmons, III v. Cnty. of L.A.*,
   No. CV 04-09731 SVW, 2010 WL 3294230 (C.D. Cal. Aug. 18, 2010) ................. 10

*Silver State Intellectual Tech., Inc. v. Garmin Intern., Inc.*,
   32 F. Supp. 3d 1155 (D. Nev. 2014) ............................................................................ 10

*Sorosky v. Burroughs Corp.*, 826 F.2d 794 (9th Cir. 1987) .............................................. 12

*Southern Construction Co., Inc. v. Pickard*, 371 U.S. 57 (1962) ...................................... 6

*Techno Lite, Inc. v. Emcod, LLC*, 44 Cal. App. 5th 462 (2020) .............................. 3, 7, 8

*Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789 (9th Cir. 2001) ...................... 13

*Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*,
   278 F.R.D. 505 (N.D. Cal. 2011) ....................................................................... 10-11, 12

*Weaving v. City of Hillsboro*, 763 F.3d 1106 (9th Cir. 2014) ......................................... 13

*Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080 (9th Cir. 2002) .................. 9

**Federal Rules of Civil Procedure**

Rule 1 .................................................................................................................................. 1,

Rule 13 ......................................................................................................................... 2, 5, 6

Rule 15 ............................................................................................................................ 4, 9

Rule 16 ................................................................................................................................ 9

**Statutes**

Lanham Act, 15 U.S.C. § 1125 ........................................................................................... 2

Defend Trade Secrets Act, 18 U.S.C. § 1836 .................................................................... 2

Georgia Uniform Trade Secrets Act, O.C.G.A. § 10-1-762 ............................................ 2

California Business and Professions Code § 16600, *et seq.* ................................. *passim*

**Other**

William W. Schwarzer, et al.,
   California Practice Guide: Federal Civil Procedure Before Trial .............................. 6

iii

*AmNet ESOP Corp. v. CrossCountry Mortgage, Inc.*, Case No. 3:24-cv-00970-MMA-KSC
PLAINTIFF'S OPPOSITION TO DEFENDANT THOMAS'S MTN FOR LEAVE TO AMEND ANSWER

## I. INTRODUCTION

Defendant Spencer Thomas's ("Thomas") Motion for Leave to File Amended Answer and Counterclaim [ECF No. 103] ("Motion") should be denied as untimely, frivolous, and futile. This action has been pending for nearly two years, and Thomas waited more than nine months since he first answered Plaintiff AmNet ESOP Corporation's ("AmNet") operative complaint before seeking leave to amend despite asserting an affirmative defense based on the same contentions. As the Motion concedes, "[t]he relief requested and a defense relying on the same issues was already asserted in Thomas's Answer." *See* ECF No. 103-1 at 11:6-8. Thomas's Motion makes no attempt to explain his tardiness.

Moreover, this is not the first time that Thomas has engaged in gamesmanship to frustrate the "just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. Thomas also previously waited more than a year after this action commenced before filing a motion to transfer the case from the Northern District of Georgia to the Southern District of California on January 19, 2024—the same day he filed his Answer to AmNet's Amended Complaint. In obtaining transfer of venue to this Court, Thomas asked the transferring court to enforce what he called a "clear" and "unequivocal" California forum selection clause in his AmNet employment agreement. ECF No. 55 at 1-2. Unquestionably, Thomas and his counsel understood the terms of his employment agreement with AmNet and the transactions and occurrences that gave rise to AmNet's sustained claims in this action for over one year.

Thomas's bad faith and improper purpose for seeking leave can also be inferred from his recent filing of a *separate* action in California state court against AmNet and its Chief Executive Officer and Chief Financial Officer, which conspicuously omits both the Employment Agreement and the California state law claim that he attempts to belatedly inject here. *See* Declaration of Benjamin Galdston in Support of Plaintiff's Opposition to Defendant Spencer Thomas's Motion for Leave to File Amended Answer and

Counterclaim ("Galdston Decl.") at ¶3, Exhibit ("Ex.") A. Putting aside the patently baseless claims asserted in Thomas's state court complaint, those alleged claims also arise from the exact same contract and transactions and occurrences as in this action. Thus, Thomas was required pursuant to Federal Rule of Civil Procedure 13 to assert those claims in his prior Answer to the Amended Complaint. The consequence of failing to do so is waiver. At bottom, Thomas's procedural machinations serve no legitimate purpose and appear calculated only to frustrate, delay, and discourage the orderly resolution of AmNet's properly sustained claims.

The Motion also fails because it is premised on a fundamental mischaracterization of AmNet's claims in this action. The Honorable Richard W. Story (N.D. Ga.) sustained AmNet's claims against Thomas, a resident of the State of Georgia, who worked for AmNet in Georgia, for: (i) breach of contract relating to Thomas's theft of loan files and other AmNet confidential information; (ii) breach of fiduciary duty as to the same misconduct; (iii) violation of the Lanham Act, 15 U.S.C. § 1125(a); (iv) tortious interference and unfair competition under Georgia state law; and (v) misappropriation of trade secrets in violation of the Georgia Uniform Trade Secrets Act ("GTSA"), O.C.G.A. § 10-1-762 and violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. Stated simply, ***none*** of these sustained claims are premised on any supposed unlawful "non-compete provisions" in Thomas's employment agreement with AmNet. On its face, Thomas's proposed counterclaim lacks merit and is futile as a matter of law.

Thomas's proposed counterclaim is futile for at least two additional reasons:

First, Thomas was required under Federal Rule of Civil Procedure 13(a) to assert his proposed counterclaim for alleged violations of California Business and Professions Code Section 16600, *et seq.* ("Section 16600"), at the time he filed his Answer because, as Thomas concedes, that claim arose "out of the transaction or occurrence that is the subject of" AmNet's claims. Fed. R. Civ. P. 13(a)(1)(A). Having failed to timely assert this compulsory counterclaim, Thomas waived it.

Second, the proposed counterclaim fails as a matter of law because it does not allege facts sufficient to state a claim for a Section 16600 violation. Instead, Thomas relies on vague, legally defective allegations that his employment agreement somehow "restrains" him from "accepting employment elsewhere." This is nonsensical. AmNet's sustained claims arise from Thomas's misappropriation of AmNet loan files and proprietary information *while Thomas was employed by AmNet*. Section 16600 does not authorize current employees to steal from their employers at the urging and for the benefit of a future employer, as Thomas would have this Court believe. *See*, *e.g.*, *Techno Lite, Inc. v. Emcod, LLC*, 44 Cal. App. 5th 462, 471 (2020) ("The statute does not affect limitations on an employee's conduct or duties *while employed*.") (emphasis original).

Finally, AmNet will be significantly prejudiced if Thomas's Motion is granted. Discovery is well under way—the parties have exchanged and responded to written requests for the production of documents and interrogatories and AmNet has noticed the depositions of various key fact witnesses. Adding a counterclaim at this late hour will only expand the scope of issues and increase the discovery required to be conducted, which will drive up litigation costs for the parties and further burden the Court with motion practice over disputed issues.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

AmNet is a licensed mortgage lender that was previously headquartered in Chula Vista. *See* Amended Complaint [ECF 29] at ¶1. Defendant CrossCountry Mortgage, LLC (incorrectly identified as "Inc." in the Amended Complaint) ("CrossCountry") is a competing licensed mortgage lender with its headquarters and principal place of business in Ohio. *Id*. at ¶2. Defendant Thomas is resident of Georgia who was employed by AmNet as a Senior Loan Officer and Branch Manager from August 2019 until his resignation in August 2022. *Id*. at ¶12, 29. During his employment with AmNet, Thomas began secret discussions with CrossCountry to leave AmNet and work for CrossCountry. *Id*. at ¶ 26. As alleged in the Amended Complaint, CrossCountry maintained a

"Transition Desk" for the purpose of encouraging and assisting loan officers employed by rival mortgage lenders, like AmNet, to misappropriate trade secrets and secretly engage in licensed activities on behalf of CrossCountry while such persons were not licensed with CrossCountry. *Id*. at ¶ 32. CrossCountry's Transition Desk encouraged and assisted Defendant Thomas in diverting AmNet borrowers and loans to CrossCountry and unlawfully disclosing AmNet's confidential information to CrossCountry while Thomas was employed by AmNet. *Id*. at ¶ 33.

AmNet commenced this action on January 10, 2023 (*see* Complaint, ECF No. 1) and filed its Amended Complaint on April 21, 2023. *See* ECF No. 29. Defendants CrossCountry and Thomas filed their motions to dismiss the Amended Complaint on May 19, 2023. *See* ECF Nos. 34, 35. On December 18, 2023, Judge Story entered an Order denying in part and granting in part Defendants' dismissal motions. *See* ECF No. 51. On January 19, 2024, Defendant CrossCountry filed its Answer to the Amended Complaint (*see* ECF No. 54) and Defendant Thomas filed his Answer to the Amended Complaint and a Motion to Transfer Case to this District. *See* ECF Nos. 55, 56.

On February 12, 2024, the Parties entered their Joint Preliminary Report and Discovery Plan (*see* ECF No. 60) and, on February 13, 2024, the Parties' Scheduling Order was entered. *See* ECF No. 61.

On May 31, 2024, Judge Story granted Thomas's motion to transfer venue and the litigation was transferred to this Court. *See* ECF No. 66.

III. **LEGAL STANDARDS**

Federal Rule of Civil Procedure 15 provides that Thomas may now amend his Answer only with AmNet's written consent or leave of court. Fed. R. Civ. P. 15(a)(2). Absent consent, leave to amend should be freely granted "when justice so requires." *Id*. Though the decision to grant or deny a motion for leave to amend is governed by the district court's discretion, leave to amend "is not to be granted automatically." *See Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990) (internal citation omitted).

Rather, the Ninth Circuit has explained that "the liberality in granting leave to amend is subject to several limitations." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (internal citation omitted); *see also DCD Programs, Ltd v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (internal citations omitted). A district court may deny a motion for leave to amend where the amendment: (1) would cause the opposing party undue prejudice, (2) is sought in bad faith, (3) is futile, or (4) would cause undue delay in the litigation. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also AmerisourceBergan Corp. v. Dialysis W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (same); *Ascon Props., Inc.*, 866 F.2d at 1160 (same).

Here, Thomas seeks to amend his Answer solely to assert a single claim alleging a violation of Section 16600 against AmNet, but otherwise proposes no other change to his Answer. Federal Rule of Civil Procedure 13 governs counterclaims and crossclaims. Under Rule 13(a)(1), a pleading "must state as a counterclaim any claim that—at the time of [] service [of the pleading]—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1)(A). Such a claim is known as a "compulsory counterclaim." *Id*.

## IV. ARGUMENT

### A. Thomas's Proposed Counterclaim is Futile and Frivolous

A proposed amendment adding a claim is "futile" if that claim would clearly be subject to dismissal. *See DCD Programs, Ltd.*, 833 F.2d at 188; *see also Moore v. Kayport Package Express*, 885 F.2d 531, 542 (9th Cir.1989) (denying leave to amend to add "defective" claims that would be "subject to dismissal."). While courts determine the legal sufficiency of a proposed amendment using the same standard as applied on a Rule 12(b)(6) motion, *see Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.1988), such issues are often more appropriately raised in a motion to dismiss rather than in an

opposition to a motion for leave to amend. *See* William W. Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before Trial § 8:422.

Thomas's proposed Section 16600 counterclaim is fatally flawed and doomed to fail as a matter of law for at least two reasons.

***First***, under Rule 13, Thomas was required to assert his proposed counterclaim in his first responsive pleading to the Amended Complaint because it "arises out of the transaction or occurrence" that is the subject matter of AmNet's claims; *i.e.*, Thomas's statutory, contractual, and common law obligations to refrain from stealing AmNet's property while employed by AmNet. Thomas's counterclaim, like AmNet's claims against him, arise from Thomas's employment at AmNet and the very same Employment Agreement at issue in this action.

Accordingly, by failing to raise the proposed counterclaim at the time of his Answer, Thomas waived it. *See, e.g.*, *Local Union No. 11 v. Thompson Electric, Inc.*, 363 F.2d 181, 184 (9th Cir. 1966) (holding a party that fails to timely raise a compulsory counterclaim has waived it and is precluded by *res judicata* from ever suing upon it and collecting cases); *accord Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 276 (9th Cir. 1980). "The purpose and design of Rule 13(a) is to prevent multiplicity of litigation and to bring about prompt resolution of all disputes arising from common matters." *Id*. (citing *Southern Construction Co., Inc. v. Pickard*, 371 U.S. 57, 60 (1962)). The fact that Thomas also filed a spurious lawsuit against AmNet in California state court also asserting claims arising from the same "transaction or occurrence" as this action, only underscores why this Motion should be denied. Permitting the counterclaim will defeat the "purpose and design" or Rule 13(a) and only sanction Thomas's dilatory tactics.

***Second***, Thomas's proposed counterclaim, on its own terms, fails as a matter of law and is thus futile. Under Section 16600, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600(a). Indeed, the recent amendment to Section 16600

(effective January 1, 2024) requires courts to read Section 16600 "broadly, in accordance with *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008), to void the application of any noncompete agreement in an employment context, or any noncompete clause in an employment contract, no matter how narrowly tailored, that does not satisfy an exception in this chapter." *Id*. at subsection (b)(1).

According to Thomas's proposed counterclaim, Thomas alleges that his employment agreement with AmNet contains "grossly overbroad and void provisions that operate as de facto noncompetition provisions; specifically, the employment agreement's definition of "Confidential Information." Thomas, however, fails to identify the specific language that he contends is offensive or how it purportedly restrained him from lawfully engaging in any profession, trade or business **subsequent** to his employment at AmNet. This is fatal to Thomas's claims because Section 16600 voids only the portion or portions of an employment agreement that operate to restrain a person from lawfully engaging in a successive profession, trade or business.

Indeed, Section 16600 "has consistently been interpreted as invalidating any employment agreement that unreasonably interferes with an employee's ability to compete with an employer **after** his or her employment ends." *Techno Lite, Inc.*, 44 Cal. App. 5th at 471 (citing *Muggill v. Reuben H. Donnelly Corp.*, 62 Cal. 2d 239, 242 (1965)). This is because "[d]uring the term of employment, an employer is entitled to its employees' 'undivided loyalty.'" *Id*. (quoting *Fowler v. Varian Assoc., Inc.*, 196 Cal. App. 3d 34, 41 (1987) (citing *Angelica Textile Serv., Inc. v. Park*, 220 Cal. App. 4th 495, 509 (2013)). As explained in detail below, this well-developed caselaw is fatal to Thomas's proposed counterclaim.

When reviewing the enforceability of restrictive covenants, the *Edwards* court's holding and analysis govern only **post-termination** activity by an employee. Thomas's Motion fails to address or even acknowledge this critical (and fatal) distinction and controlling caselaw. Contrary to Thomas's broad assertions, *Edwards* does not void

confidentiality restrictions where, as here, the employee violates those provisions while still engaged by the employer. *Techno Lite, Inc.*, 44 Cal. App. 5th at 471 (Section 16600 "does not affect limitations on an employee's conduct or duties *while employed*." (emphasis in original). AmNet's claims indisputably arise from Thomas's theft of AmNet property *while he was employed by AmNet*. Indeed, the gravamen of AmNet's claims is that Thomas breached his contractual and other duties (including the duty of undivided loyalty) to AmNet while he was still employed by AmNet. *See*, *e.g.*, Order Denying in Part and Granting in Part Defendants' Motions to Dismiss, ECF No. 51 at p. 11 (sustaining AmNet's breach of contract claim where "[t]he heart of Plaintiff's [] claim is that Thomas disclosed AmNet's 'confidential information' to CrossCountry and did not devote his full time and attention to AmNet *during his employment*.") (emphasis added); p. 14 (sustaining AmNet's breach of fiduciary duty claim where "*[w]hile in the employ of AmNet*, Thomas admittedly owed a fiduciary duty to AmNet" . . . . [a]nd AmNet alleges that the duties and loyalty and fair dealing prohibited Thomas from trying to solicit AmNet's customers for his own benefit *while still employed*" by AmNet) (emphasis added); pp. 20-25 (sustaining Lanham Act claims for Thomas's material misrepresentations while employed by AmNet and rejecting claims for representations made to *prospective* CrossCountry borrowers); pp. 25-30 (sustaining Defense Trade Secrets Act and Georgia Trade Secrets Act claims premised on Thomas's theft of proprietary confidential AmNet information while employed by AmNet); pp. 30-32 (sustaining AmNet's unfair competition claims based on Defendants' "alleged misappropriation of AmNet's proprietary information" during the time of Thomas's employment at AmNet). Thus, Thomas has no claim whatsoever under Section 16600.

On this basis alone, AmNet respectfully submits the Court should deny Thomas's Motion.

**B.     Thomas Inexplicably and Unduly Delayed Seeking Leave to Amend**

To show undue delay, the opposing party must at least show delay past the point of

8

*AmNet ESOP Corp. v. CrossCountry Mortgage, Inc.*, Case No. 3:24-cv-00970-MMA-KSC
PLAINTIFF'S OPPOSITION TO DEFENDANT THOMAS'S MTN FOR LEAVE TO AMEND ANSWER

initiation of discovery; after that time, courts will permit amendment only if the moving party has a reasonable explanation for the delay. *See Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15, 20 (1st Cir. 1979) (finding "undue delay" where movant failed to seek leave to amend for two years, after parties had already engaged in discovery, and gave no valid reason for doing so). Here, discovery has commenced and is well underway. The parties have exchanged written discovery requests and responses. *See* Galdston Decl. at ¶4. AmNet has substantially completed its production of documents after collecting and searching millions of pages of information. *Id*. at ¶5 AmNet also has noticed depositions of key fact witnesses to commence in December. *Id*. at ¶6.

Moreover, this action has been pending for nearly two years, Defendants' pleading challenges have been fully resolved, and the parties' claims and defenses are well-developed. Importantly, on February 13, 2024, Judge Story entered the Parties' "Joint Preliminary Report and Discovery Plan" (ECF No. 61), which among other things, ordered that "the time limits for adding parties, amending the pleadings, . . . . are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court" except for discovery deadlines. *Id*. at p. 1. The court's Order expressly stated: "Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law." *Id*. at 8 (emphasis original). As of February 12, 2024, the date the joint report was filed, Thomas represented to the court that "no amendments to the pleadings were anticipated or necessary." *Id*.

Once a district court files a pretrial scheduling order, Rule 16 trumps Rule 15. *See, e.g., Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992); *see also Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087-88 (9th Cir. 2002) (same). Pursuant to Rule 16(b), a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge . . . ." Fed. R. Civ. P. 16(b). If good cause is shown, the party must then demonstrate that amendment was proper under

9
*AmNet ESOP Corp. v. CrossCountry Mortgage, Inc.*, Case No. 3:24-cv-00970-MMA-KSC
PLAINTIFF'S OPPOSITION TO DEFENDANT THOMAS'S MTN FOR LEAVE TO AMEND ANSWER

Rule 15. *Johnson*, 975 F.2d at 608; Fed.R.Civ.P. 15, 16(b). Thomas can neither show good cause nor demonstrate that amendment is proper under Rule 15. Accordingly, Thomas's Motion is untimely under the Scheduling Order and Rule 16, and AmNet submits Thomas's Motion should be denied for this separate and independent reason.

Furthermore, where, like Thomas did here, a party represents to the court that the party will not move to amend its pleading, "and subsequently moves to amend after 'the proverbial writing [is] on the wall' that the party will suffer an adverse judgment," the court can infer the amendment is sought in bad faith. *See Albers v. Yarbrough World Solutions, LLC*, No. 5:19-cv-05896-EJD, 2020 WL 6064334, at *10 (N.D. Cal. Oct. 14, 2020); *Simmons, III v. Cnty. of L.A.*, No. CV 04-09731 SVW, 2010 WL 3294230, at *1 (C.D. Cal. Aug. 18, 2010) (same). After reviewing AmNet's document productions and written interrogatory answers, Thomas apparently recognized that the "writing is on the wall" and he will likely suffer an adverse judgment in this action.

At bottom, Thomas's Motion makes no attempt to explain his tardiness in seeking leave at this late hour. Instead, his Motion merely claims *ipse dixit* that he did not "unduly delay in filing this motion" while paradoxically conceding (as he must) that "[t]he relief requested and a defense relying on the same issues was already asserted in Thomas's Answer." ECF No. 103-1 at 11:6-8. But Thomas's Answer was filed on January 19, 2024, approximately nine months ago (and ***after*** amendments to Section 16600 became effective on January 1, 2024). *See* ECF No. 56. Courts have found lack of diligence on the passage of far less time. *See*, *e.g.*, *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1368 (Fed. Cir. 2006) (affirming district court finding that three-month delay in seeking amendment constituted lack of diligence); *Silver State Intellectual Tech., Inc. v. Garmin Intern., Inc.,* 32 F. Supp. 3d 1155, 1163 (D. Nev. 2014) (waiting more than two months after order on motion to dismiss did not constitute diligence); *Allure Energy, Inc. v. Nest Labs, Inc.*, 84 F. Supp. 3d 538, 541 (E.D. Tex. 2015) (waiting five months to seek leave to amend did not constitute diligence); *Trans Video Elecs., Ltd. v. Sony Elecs.,*

*Inc.*, 278 F.R.D. 505, 508 (N.D. Cal. 2011), aff'd, 475 F. App'x 334 (Fed. Cir. 2012) (waiting four months to seek leave to amend did not constitute diligence); *Finisar Corp., v. The DirecTV Group, Inc.*, 424 F. Supp. 2d 896, 902 (E.D. Tex. 2006) (same); *Mears Techs., Inc. v. Finisar Corp.*, No. 13-cv-376-JRG, 2014 WL 12605571, at *2 (E.D. Tex. Oct. 6, 2014) (no diligence when moving party waited more than 60 days after issuance of claim construction order and 32 days after the deadline to amend as of right). Thomas's Motion thus only raises questions and answers none. For example, if Thomas was sufficiently aware of Section 16600's provisions such that he asserted an affirmative defense based thereupon in his Answer, why not assert his proposed Section 16600 counterclaim then? The Motion is silent. *See Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-CV-04000-EMC, 2016 WL 5869758, at *5 (N.D. Cal. Oct. 7, 2016) (denying motion to amend and finding bad faith where a party raised a new claim based on facts long known to that party).

Moreover, this is not the first time that Thomas has sought to upend the progress of the litigation through procedural maneuvering. Thomas also previously waited more than a year after this action commenced before filing a motion to transfer the case from the Northern District of Georgia to the Southern District of California on January 19, 2024—the same day he filed his Answer to AmNet's Amended Complaint. In advocating for transfer of venue to this Court, Thomas asked the Court to enforce what he called a "clear" and "unequivocal" California forum selection clause in his AmNet employment agreement. ECF No. 55 at 1-2. Unquestionably, Thomas and his counsel understood the "clear" and "unequivocal" terms of Thomas's employment agreement and the transactions and occurrences that gave rise to AmNet's sustained claims in this action for over one year. Why then did he wait until now to try to assert a Section 16600 counterclaim?

The compelling and only logical inference is that Thomas procrastinated to see if his prior gambits would succeed. Having failed, this is but the latest bad faith stratagem

OMNUM LAW APC
4350 EXECUTIVE DRIVE, SUITE 350
SAN DIEGO, CALIFORNIA 92121

to forestall justice.

### C. Thomas's Bad Faith Can Be Inferred From the Circumstances of the Motion and Thomas's History of Litigation Gamesmanship

Courts find bad faith where a party engages in meritless tactics to delay or exacerbate litigation, such as, for example, seeking to add a defendant merely to destroy diversity jurisdiction. *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987). Bad faith is also found where, like Thomas's Motion, a party transparently seeks to "prolong the litigation by adding new but baseless legal theories." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 881 (9th Cir. 1999).

Here, Thomas inexplicably waited more than nine months since he first answered AmNet's Amended Complaint to seek leave despite being fully informed about the Employment Agreement and its provisions, and he apparently did so only after his venue transfer and parallel state court action did not accomplish the desired results. *See*, *e.g.*, *Fullview, Inc. v. Polycom, Inc.*, No. 18-cv-00510-EMC, 2021 WL 1668017, at *5 (N.D. Cal. April 28, 2021) (denying a motion to amend and finding bad faith where the moving party "failed to exercise diligence in timely asserting" new claims.); *see also Trans Video Elecs., Ltd.*, 287 F.R.D. at 509-10 ("undue delay combined with bad faith is enough to justify a denial of a motion to amend."). The court's reasoning in denying leave to amend in *Trans Video Electronics, Ltd.* is instructive. There, the court noted that the moving party did "little to explain how it acted with diligence" and failed to explain why it did not assert the proposed new claim "either at the outset of the case or why it waited four months after the claim construction order to move to amend." *Id.* at 509. Like the moving party in *Trans Video Electronics, Ltd.*, Thomas fails to explain "how he acted with diligence" or why he did not assert the Section 16600 claim when he filed his answer and delayed more than ten months after the court entered its Order deciding his motion to dismiss the Amended Complaint. *Id.* at 509; *see also* Thomas's Answer to AmNet's Amended Complaint, ECF No. 51.

Likewise, rather than timely raise all counterclaims arising from the Employment

Agreement, Thomas filed a *separate* lawsuit against AmNet and its Officers in California state court on August 20, 2024; *i.e.*, about two months before filing the instant Motion. *See* Galdston Decl. at ¶3, Ex. A. Thomas's state court complaint is patently deficient for a host of substantive and procedural defects and appears to be an end-run attempt to circumvent this Court's jurisdiction. *See*, *e.g.*, *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 799 (9th Cir. 2001), *superseded by statute on other grounds as stated in Weaving v. City of Hillsboro*, 763 F.3d 1106, 1112 (9th Cir. 2014) (Bad faith can be found when the moving party has a "history of dilatory tactics.").

These facts, taken together, give rise to a strong inference of Thomas's bad faith.

### D. Permitting Leave to Amend Will Cause AmNet Undue Prejudice

In the context of a motion pursuant to Rule 15, "undue prejudice" means substantial prejudice or substantial negative effect. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Substantial prejudice occurs where a party seeks to add a claim that would greatly alter the nature of the litigation or would require the opposing party to undertake, at this later hour, an entirely new course of defense. *Id*. These are the exact circumstances presented here.

This case is well advanced. The Parties are engaged in discovery, having exchanged extensive written requests. Specifically, Defendants Thomas and CrossCountry have collectively propounded 23 interrogatories (many with multiple sub-parts) and nearly 200 separate document requests upon AmNet, including Thomas's Second Set of Requests for Production (containing 14 separate requests), which was served the same day as this Opposition filing. Galdston Decl. at ¶4. AmNet has dedicated tremendous resources and expense to collecting, searching, reviewing, and producing documents in response to Defendants' requests. *Id*. at ¶5. Specifically, AmNet has collected and searched for responsive documents from among more than 1 Terabyte of electronically stored information. *Id*. AmNet recently completed its substantial production of documents, totaling more than 151,000 documents and nearly one million

pages. *Id*. Finally, AmNet has noticed the depositions of certain key fact witnesses to commence in December. *Id*. at ¶6. Permitting Thomas to amend his Answer and add a frivolous claim would cause undue prejudice to AmNet by essentially resetting discovery back to square one.

Taken together with all other factors discussed above, permitting amendment would only impose avoidable hardship and expense on AmNet and defeat the "just, speedy, and inexpensive determination" of this action required pursuant to Rule 1.

## V. CONCLUSION

For all of the reasons stated above, AmNet respectfully submits that Thomas's Motion should be denied.

Dated: November 18, 2024

OMNUM LAW APC

By: /s/ Benjamin Galdston
    Benjamin Galdston, Esq.

4350 Executive Drive, Suite 350
San Diego, CA 92121
Tel: 858.539.9767
Email: bgaldston@omnumlaw.com

*Attorneys for Plaintiff AmNet ESOP Corporation*